FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 04 2006

JAMES R LARSEN, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE LAMAR COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY, a member of CNA Insurance Companies, and MICHAEL H. RUNYAN,<br><br>Defendants. | No. CV-05-320-AAM<br><br>**ORDER DENYING MOTION TO DISMISS OR FOR STAY** |

**BEFORE THE COURT** is defendant Continental Casualty Company's "Motion For Summary Judgment Of Dismissal Without Prejudice, Or, In The Alternative, For Stay, Because Of Pending Underlying Action." (Ct. Rec. 14).

This motion was heard with oral argument on April 27, 2006. Eugene I. Annis, Esq., appeared for the plaintiff. Patrick S. Brady, Esq., appeared for the defendant.

**I. BACKGROUND**

The Lamar Company, LLC ("Lamar"), is a billboard company. In 1998, as part of the purchase of another billboard company, Lamar acquired a billboard located in Athol, Idaho. Athol is in Kootenai County, Idaho. In May 1998, James

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-    1**

J. ("Jeff") Kuntz signed an Independent Contractor Agreement with Lamar. Kuntz was to install advertising on the Athol billboard. On November 22, 1998, Kuntz was severely injured while using the billboard's catwalk when the metal rod he was using came into contact with a nearby high voltage power line.

In 2000, Kuntz commenced a lawsuit in U.S. District Court for the Eastern District of Washington against Lamar and against Kootenai Electric Cooperative, Inc. ("KEC") which owned the power line in question. The case (a.k.a. "The Kuntz Lawsuit") was assigned to the Honorable Robert H. Whaley (CS-00-415-RHW) and proceeded to jury trial. Continental Casualty Company ("Continental" a.k.a. "CNA"), Lamar's insurer, defended Lamar in that lawsuit. The jury apportioned negligence as follows: Kuntz- 12%; Lamar- 38%; KEC- 50%. The jury awarded damages to Kuntz in the sum of $18,306,504; to his wife, Jennifer, in the sum of $1 million; and to each of Kuntz's five children in the sum of $125,000. Based on the apportionment of negligence, judgment was entered against Lamar for $7,573,971, and against KEC for $9,965,752. The judgment was entered in October 2002 and then appealed to the Ninth Circuit Court of Appeals which affirmed the same in October 2004.

In December 2002, KEC filed an action against Lamar in state court in Kootenai County, Idaho (a.k.a. "the KEC Lawsuit"), seeking to have Lamar indemnify KEC for the $9,965,752 judgment against KEC in federal court. Continental has defended Lamar throughout this state court lawsuit and continues to do so at the present time. In October 2003, the Kootenai County District Court granted summary judgment to KEC on two issues. The court found as a matter of law that pursuant to Idaho's High Voltage Act (HVA), Lamar was required to indemnify KEC for all damages, costs, and expenses incurred by KEC as a result of Kuntz's contact with the power line. In addition, the court found that under Idaho's Rules of Civil Procedure, KEC had not waived its right to bring the indemnification claim because of its failure to assert such a claim against Lamar in

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-**      2

the federal lawsuit. Lastly, however, the court denied the parties' cross-motions for summary judgment on the issue of laches, finding there was a genuine issue of material fact whether KEC had unreasonably delayed in asserting an indemnification claim against Lamar.

Lamar appealed the Kootenai County District Court decision to the Idaho Supreme Court. On September 7, 2005, the Idaho Supreme Court entered an order requiring the parties to show cause why the appeal should not be dismissed because it was not from a "final judgment." According to the court:

> It appears that the partial summary judgment granted by the District Court did not resolve any claim between the parties. It only construed Idaho Code §55-2404(2) [of the HVA] and held that [KEC's] claim was not barred by res judicata. It left unresolved the Defendants' defense of laches.

(Ex. 5 to Ct. Rec. 14).

KEC filed a response to the show cause order and Lamar filed a "Notice of Non-Filing," and on September 27, 2005, the Idaho Supreme Court dismissed the appeal. (Ex. 6 to Ct. Rec. 14). On October 19, 2005, the court filed its "Remittitur," formally returning the case to the Kootenai County District Court where it remains pending. (*Id.*)

Lamar had two insurance policies with Continental. The limit on one of the policies (the primary liability policy) was $1 million, and the limit on a separate umbrella policy was $15 million. Pursuant to these policies, Continental paid the $7,573,971 judgment against Lamar in the federal lawsuit, leaving $8,426,029 available under the umbrella policy. In a letter dated July 14, 2005, Continental acknowledged that $8,426,029 was available on the umbrella policy in the event a "final judgment" was entered against Lamar in the indemnity action brought by KEC in Kootenai County District Court. (Ex. 2 to Ct. Rec. 14). In a letter dated August 8, 2005, however, Continental declined to state it would cover Lamar's potential exposure above the remaining policy limits in the event of a "final

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-**     3

judgment" against Lamar in the KEC Lawsuit. (Ex. 3 to Ct. Rec. 14).[1] Lamar has "potential exposure" above the remaining policy limits of $8,426,029 because in the KEC Lawsuit, KEC seeks to be indemnified by Lamar for the entire $9,965,752 judgment awarded against KEC in the federal lawsuit.

On October 12, 2005, Lamar commenced the declaratory judgment action now pending in this court. The current complaint at issue is a "Second Amended Complaint" filed January 26, 2006, which names Continental and Michael H. Runyan as defendants. (Ct. Rec. 11). The "Second Amended Complaint" alleges Runyan, a Seattle attorney, consummated a settlement with Kuntz and his family members allegedly on behalf of Lamar prior to the time the federal jury rendered its verdict on Kuntz's claims, and that he did so after consultation with, and approval by Continental. (Paragraph 3.6). Lamar alleges it was not notified, consulted or advised of the settlement by either Continental or Runyan, and that Runyan acted solely at Continental's request and instruction in negotiating and executing the settlement. (Paragraph 3.7). Lamar alleges the settlement was a "high-low" agreement and that it did not address KEC's indemnity claims against Lamar, including such claims under Idaho's HVA. (Paragraph 3.8). Lamar alleges that defendants did not advise it the settlement terms would not protect it from KEC's indemnity claims, and did not advise Lamar that it could or should participate in the settlement negotiations, or that the settlement terms could expose it to liability or judgment in excess of the limits of Lamar's insurance coverage. (Paragraph 3.9). Lamar alleges Continental authorized and/or directed Runyan to execute the settlement agreement and that the agreement was executed purportedly

---

[1] Paragraph 3.15 of Lamar's "Second Amended Complaint" alleges "[t]he Judgment rendered against Lamar in the KEC Lawsuit is in excess of contractual [Continental] policies limits." No "final judgment" has been rendered against Lamar in the KEC Lawsuit, however, and certainly there has been no judgment entered against Lamar for a specific amount of money.

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-       4**

on behalf of Lamar before Lamar was aware of settlement negotiations or the settlement. (Paragraph 3.10). Finally, Lamar alleges that:

> As a result of the acts, errors, and omissions of defendants, Lamar has been directly, proximately, and legally damaged in an amount equal to the claims and demands asserted by KEC in the KEC Lawsuit, including **but not limited to**, the jury award against KEC in the amount of $9,965,752, together with legal interest accruing on such amount, and the costs and expenses, together with attorneys fees, asserted by KEC against Lamar in the KEC Lawsuit.
>
> Defendants' acts, errors, and omissions have further damaged Lamar to the extent Lamar has to pay any amount to KEC as a result of, or related to, the KEC Lawsuit because any such payments damage the value of Lamar as a public company.

(Paragraph 3.20)(emphasis added).

In the "Second Amended Complaint," Lamar asserts common law claims of legal malpractice and breach of fiduciary duty against defendant Runyan, and common law claims of negligence, breach of fiduciary duty, waiver, and breach of duty of good faith and fair dealing against defendant Continental.[2] Lamar prays for the following relief:

> 1. . . . a decree declaring that defendants, as a matter of fact and law, are jointly and severally liable to Lamar for all damages, fees, expenses, and /or other amounts for which Lamar may sustain, or be responsible or liable for or related to, arising out of, or connected with [the] Kuntz Lawsuit and/or the KEC Lawsuit as a result of defendants' negligence, breach of fiduciary duties, breach of contract, and/or breach of the duty of good faith and fair dealings;
>
> 2. . . . a decree declaring that defendants, as a matter of fact and law, are jointly and severally liable to Lamar for attorneys' fees, penalties, and legal interest to the extent allowed under applicable law; and
>
> 3. . . . all other equitable and just relief as may be appropriate.

---

[2] Subject matter jurisdiction is based on diversity of citizenship, making state law applicable. The federal Declaratory Judgment Act does not provide an independent basis of federal question jurisdiction. *Staccke v. United States Secretary of Labor*, 841 F.2d 278, 280 (9th Cir. 1988).

**ORDER DENYING MOTION TO DISMISS OR FOR STAY-** 5

Because of the absence of a "final judgment" against Lamar in the Idaho indemnification action brought by KEC (the KEC Lawsuit), Continental contends there is no present "case or controversy" in the declaratory judgment action before this court. In other words, because there is no "final judgment" that Lamar is obligated to indemnify KEC in the sum of $9,965,752, Continental contends there is no reason for this court to declare that it is obligated to provide Lamar with coverage beyond the $16 million policy limits. According to Continental, a decision from this court on that question, at this point, would amount to an advisory opinion. Continental asks the court to dismiss Lamar's declaratory judgment action, or alternatively, to stay the action pending completion of the Idaho proceedings.

## II. DISCUSSION

### A. Type of Motion- Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 56

Continental's motion is styled as one for "summary judgment," but it is actually a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, or alternatively for a stay pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201. The motion appears to be a "speaking motion" which attacks subject matter jurisdiction as a matter of fact (a "factual attack"). As such, the court is not limited to considering the allegations in the complaint, but can consider extrinsic evidence. If this extrinsic evidence is disputed, the court can weigh the evidence and determine the facts in order to satisfy itself that it has power to hear the case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Faced with a "factual attack" on subject matter jurisdiction, the court may proceed in a manner different from that under Fed. R. Civ. P. 12(b)(6) (dismissal for failure to state a claim) or Fed. R. Civ. P. 56 (summary judgment). *Id.* No presumption of truthfulness attaches to the allegations in the plaintiff's complaint, and the existence of disputed material facts does not preclude the court from

evaluating for itself the merits of the jurisdictional claims. *Id.* Furthermore, the burden of proof is on the plaintiff, the party who invoked jurisdiction. *Id.*; *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987). "Where the jurisdictional issue is **separable** from the merits of the case, the court may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill Publishing Company, Inc. v. General Telephone & Electronics Corporation*, 594 F.2d 730, 733 (9th Cir. 1979)(emphasis added).

That the court considers extrinsic evidence does not necessarily convert the motion to one for summary judgment. *National Union Fire Insurance Company Of Pittsburgh, PA v. Continental Illinois Corporation*, 646 F.Supp. 746, 748 n. 6 (N.D. Ill. 1986). It is only where the issues of jurisdiction and substance (the merits) are intertwined that the court, upon consideration of extrinsic evidence, is obliged to treat the motion as one for summary judgment. Where the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the Rule 56 summary judgment standard applies and it is the defendant's burden to establish there are no material facts in dispute and that defendant is entitled to prevail as a matter of law. *Roberts*, 812 F.2d at 1177.

In the case at bar, the question of jurisdiction ("ripeness") does not depend on the resolution of factual issues going to the merits of Lamar's tort claims against Continental. Therefore, there is no need for application of the Rule 56 standard.[3]

---

[3] As such, it is not necessary to address Lamar's argument that Continental's pleading of waiver, estoppel and laches as affirmative defenses, which go to the merits of Lamar's tort claims, assumes those claims are "ripe" and therefore, that Continental has evidence of "ripeness" which Lamar should be allowed to uncover

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-         7**

**B. "Case or Controversy"/Existence Of Subject Matter Jurisdiction**

The Declaratory Judgment Act, 28 U.S.C. §2201(a), provides:

> In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Federal courts have no power to render advisory opinions as to what the law ought to be or affecting a dispute that has not yet arisen. *Webster v. Reproductive Health Services*, 492 U.S. 490, 500, 109 S.Ct. 3040 (1989). The "case or controversy" requirement shields federal courts from being drawn into disputes as to abstract or hypothetical cases. The prohibition against advisory opinions prevents decisions on questions in the abstract without a concrete case before the court.

On the other hand, the requirement that a case be "ripe" for review addresses the timing of a decision in a particular case. The "ripeness" doctrine prevents premature adjudication and is aimed at cases that do not yet have a concrete impact upon the parties. *Exxon Corp. v. Heinze*, 32 F.3d 1399, 1404 (9th Cir. 1994). "Whether a claim is ripe for adjudication goes to the court's subject matter jurisdiction under the case or controversy clause of article III." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)(emphasis added).

The issue in the case at bar is one of "timing" and therefore, concerns "ripeness." Lamar's declaratory judgment action is a "concrete case" involving a dispute which is neither abstract or hypothetical- i.e., whether Continental

---

through discovery before there is any summary judgment adjudication. Besides that, Continental had to plead these affirmative defenses in its Answer or risk waiving them. It is noted, however, that Continental's Answer to Lamar's Second Amended Complaint also pleads, as an affirmative defense, that Lamar's tort claims are not "ripe." (Ct. Rec. 13 at p. 7).

**ORDER DENYING MOTION TO DISMISS OR FOR STAY-      8**

breached various duties owed to Lamar by virtue of the settlement agreement negotiated and executed in the Kuntz lawsuit. If one or more of those breaches of duty are established by a preponderance of the evidence, Lamar asks this court to declare that Continental is liable to Lamar for "all damages, fees, expenses, and/or other amounts for which Lamar may sustain, or be responsible or liable for or related to, arising out of, or connected with [the] Kuntz Lawsuit and/or the KEC Lawsuit." The dispute concerns whether Continental committed the torts of which it is accused by Lamar.

    The question is whether this dispute has yet to have a "concrete impact" upon the parties, considering there is no "final judgment" in the KEC lawsuit that Lamar is liable to KEC for anything. While the Kootenai County District Court has found that Idaho's High Voltage Act (HVA) would require Lamar to indemnify KEC for all damages, costs, and expenses incurred by KEC as a result of Kuntz's contact with the power line, it has yet to resolve the issue of whether KEC unreasonably delayed in bringing its claim for indemnification to the prejudice of Lamar (i.e., the laches issue). If the court finds in favor of Lamar on the laches issue, Lamar is not obligated to indemnify KEC and may not need a declaration from this court that Continental has to reimburse Lamar for amounts in excess of policy limits.

    "[T]he ripeness inquiry contains both a constitutional and a prudential component." *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993). The constitutional component of "ripeness" is often treated under the rubric of standing, and, in many cases, coincides squarely with standing's injury in fact prong. *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1138 (9th Cir. 2000). "Ripeness" can be characterized as standing on a timeline. *Id.* In assuring that the jurisdictional prerequisite of a "case or controversy" is satisfied, it is necessary to consider whether the plaintiff faces a realistic danger of sustaining a direct injury, or whether the alleged injury is too imaginary or

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-**    9

speculative to support jurisdiction. *Id.* at 1139. Specifically in the declaratory judgment context, "the question **in each case** is whether **the facts alleged, under all the circumstances,** show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510 (1941)(emphasis added). Stated the U.S. Supreme Court in *Maryland Cas. Co.*: "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Id.*

      Notwithstanding the lack of a "final judgment" against Lamar in the KEC Lawsuit, there is a "substantial controversy" between Lamar and Continental in the declaratory judgment action before this court and, since the Kootenai County District Court has already found that under the HVA Lamar would be obliged to indemnify KEC, this controversy is of "sufficient immediacy and reality" to consider issuance of a declaratory judgment. There is a "realistic danger" of direct injury to Lamar. If the Kootenai County District Court finds against Lamar on its laches defense, then there will be a "final judgment" against Lamar. The fact Lamar may then take an appeal to the Idaho Supreme Court would not diminish the fact that there is a "final judgment" with no guarantee of reversal on appeal. The very realistic possibility of this occurring is enough to warrant allowing Lamar to proceed with its declaratory judgment action (including all the discovery that may be entailed on issues of tort liability), rather than requiring it to wait and find out if a "final judgment" will be entered against it.

      If a "final judgment" is eventually entered against Lamar, any delay in proceeding with this declaratory judgment action would likely be to the detriment of Lamar. For this reason, the prudential component of the "ripeness" inquiry

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-**     10

which requires the court to consider the hardship to the parties of withholding court consideration, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507 (1967), weighs in favor of not dismissing Lamar's declaratory judgment action. Furthermore, a dismissal of the declaratory judgment action for lack of a "case or controversy" would likely make the statute of limitations an issue if and when Lamar re-filed the declaratory judgment action (after a "final judgment" had been entered against it in the KEC Lawsuit). The alleged torts by Continental occurred on or around October 2002 and this declaratory judgment action was filed in October 2005, presumably to avoid problems with applicable Washington statutes of limitation. A declaratory judgment action re-filed by Lamar after a "final judgment" is entered against it in Kootenai County District Court would be subject to a limitations challenge.

Continental says it is willing to waive "any statute of limitations to, the extent that if dismissal without prejudice were followed by a subsequent [re-]filing of Lamar's claims, the date of that re-filing would relate back to the date of Lamar's original Complaint." This offered waiver, although a factor for the court's consideration, does not compel a finding that Lamar's tort claims against Continental are constitutionally "unripe." Moreover, prudential considerations still favor Lamar. It appears discovery on these tort claims will be extensive and that any delay in commencing the discovery process has significant potential for prejudicing Lamar (i.e., possibility that witnesses may become unavailable or that their recall of events will not be as good).[4]

If Lamar prevails on its laches defense in Kootenai County District Court,

---

[4] Lamar can decide for itself whether the waiver offered by Continental is enough to convince it to wait for adjudication of its tort claims until the Idaho courts rule on the laches issue. If it is enough, the parties can stipulate to a dismissal or a stay of the declaratory judgment action.

**ORDER DENYING MOTION TO DISMISS OR FOR STAY-    11**

an issue of "mootness" may arise, although perhaps not until the Idaho Supreme Court resolves any appeal that is taken from such a ruling. "Mootness" is distinct from "ripeness" and Continental does not specifically raise a "mootness" challenge in its motion. The central issue in any "mootness" challenge is whether changes in the circumstances existing when the action was filed have forestalled any meaningful relief. *West v. Secretary of Dept. of Transportation*, 206 F.3d 920, 925 (9th Cir. 2000). If Lamar prevails on its laches defense in Kootenai County District Court, and this ruling is then upheld on appeal by the Idaho Supreme Court, the declaratory relief sought by Lamar may no longer be meaningful or effective since the Idaho courts will have found that Lamar does not need to indemnify KEC.

      Lamar contends, however, that it has "already incurred legal expenses as a result of [Continental's] negligence, breach of fiduciary duties, breach of contract, and/or breach of duty of good faith and fair dealing" and that such amounts are in addition to the indemnity amount which may be awarded to KEC in the Idaho court ($9,965,752). Lamar suggests that even if it prevails on its laches defense in the Idaho courts, it will have incurred certain fees and expenses for which this court should declare Continental liable in the event Continental is found to have breached a duty to Lamar.[5] "Mootness" is not an issue the court needs to resolve now, nor will it resolve it now. Suffice it to say, Continental is not foreclosed from making a "mootness" challenge in the event Lamar prevails in the Idaho courts.

      Continental cites a host of cases from various jurisdictions standing for the

---

[5] Continental contends Lamar has incurred no fees and expenses in the KEC Lawsuit because Continental is defending Lamar in that lawsuit. Lamar's general counsel notes that although Continental is defending Lamar in the KEC Lawsuit, Lamar hired outside counsel to "monitor" the KEC Lawsuit on Lamar's behalf. (McIlwain Affidavit, Ct. Rec. 25 at Paragraph 5).

**ORDER DENYING MOTION TO DISMISS OR FOR STAY-    12**

proposition that generally, a declaratory judgment action brought prior to the determination of the insured's liability is premature since the question to be determined (whether the insurer has a duty to indemnify the insured) is not then "ripe" for adjudication. The Ninth Circuit, however, has consistently held that a dispute between an insurer and an insured "over the duties imposed by an insurance contract" satisfies the "case or controversy" requirement of Article III. *Government Employees Insurance Company v. Dizol*, 133 F.3d 1220, 1222 n. 2 (9th Cir. 1998), citing *American Nat'l Fire Ins. v. Hungerford*, 53 F.3d 1012, 1015-16 (9th Cir. 1995), and *American States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994). In *Kearns*, the court of appeals noted that in *Aetna Casualty and Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992), it had held that "in a declaratory judgment action brought to determine a duty to defend **or** to indemnify, the court may exercise jurisdiction." 15 F.3d at 144 (emphasis added).[6] The *Kearns* court also "read *Merritt* to hold that there is no per se rule against the district court exercising its jurisdiction to resolve an insurance coverage dispute

---

[6] This language appears to rebut Continental's suggestion that a controversy only exists when the insurer's duty to defend (as opposed to the duty to indemnify) in the underlying lawsuit remains unresolved. Continental contends there would be an actual controversy between it and Lamar only if there was an issue of Continental's duty to defend in the underlying lawsuit (the Idaho action). None of the Ninth Circuit cases cited by Continental for this proposition (*Hungerford*, *Kearns*, and *American States Ins. Co. v. Dastar Corp.*, 318 F.3d 881 (9th Cir. 2003)) specifically and explicitly hold that an actual controversy exists only when there is an issue about the insurer's duty to defend in the underlying lawsuit. Rather, Continental asserts that as much is implied from language in those cases referring to the duties to defend and indemnify in the conjunctive, rather than the disjunctive: "duties to defend and indemnify" and "duty to defend and indemnify." It is a weak implication at best, especially in light of the disjunctive language used in *Kearns*: "duty to defend or to indemnify."

**ORDER DENYING MOTION TO DISMISS OR FOR STAY-     13**

when the underlying liability suit is pending in state court." *Id.* at 145.[7]

As noted above, whether there is a "controversy" is something to be determined on a case-by-case basis considering the facts alleged, under all of the circumstances. None of the cases cited by Continental present the exacts facts and circumstances present before this court and therefore, are distinguishable to one extent or another. The case before this court does not present the usual indemnity situation where an insurer in a declaratory judgment action seeks a determination of its duty to indemnify prior to determination of the liability of the insured in an underlying action. Here, the insured (Lamar) seeks a declaratory judgment that its insurer (Continental) has an obligation to indemnify it for any amount it is found liable in the underlying state court action. The state court has already found Lamar is liable under Idaho's High Voltage Act to indemnify KEC, but that this liability may be extinguished by Lamar's laches defense which has yet to be ruled upon. Furthermore, the dispute between Lamar and Continental is unique in that it is not "over the duties imposed by an insurance contract." Rather, Lamar asserts the basis for it to be indemnified by Continental (in the event Lamar has to indemnify KEC) is not contract, but rather tort. In other words, Lamar says Continental must indemnify Lamar not because of a contractual obligation, but

---

[7] These Ninth Circuit decisions came down after *Ticor Title Ins. Co. v. American Resources, Ltd.*, 859 F.2d 772 (9th Cir. 1988), which is cited by Continental. Moreover, in *Ticor*, the circuit did not decide whether a "controversy" in fact existed. It merely speculated about the possibility that a controversy might not exist and did so in a footnote. *Id.* at 777, n. 7. In a concurring opinion, one of the panel judges took the majority to task for doing so. *Id.* at 777. In the subsequent decision in *Kearns*, the circuit noted that "[i]n **dicta**, we have stated that it is doubtful that an actual controversy exists in an action seeking to establish that there is no duty to indemnify, when the underlying state court suit that would produce the liability has not yet been resolved. 15 F.3d at 144 (emphasis added).

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-    14**

because Continental has committed various torts against Lamar which have resulted in the prospect of Lamar having to indemnify KEC. Continental's tort liability does not depend on what happens in the Idaho lawsuit between KEC and Lamar. Continental's duty to pay Lamar depends on adjudication of Continental's tort liability in the declaratory judgment action in this court, not on any adjudication in the KEC Lawsuit. Damages are a different issue. As discussed, "mootness" may be an issue if what happens in the KEC Lawsuit makes meaningless the declaratory relief sought by Lamar.

There is a "case or controversy" between Lamar and Continental which is "ripe" for adjudication. Therefore, subject matter jurisdiction is established. The next question is whether this jurisdiction should be exercised.

### C. Discretion To Exercise Jurisdiction/Abstention

28 U.S.C. §2201(a) states the court "**may** declare the rights . . . of any interested party." (Emphasis added). A district court's discretion to hear declaratory actions over which it has jurisdiction is guided by the factors announced by the Supreme Court in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173 (1942). These factors include avoiding needless determination of state law issues, discouraging the filing of declaratory actions as a means of forum shopping, and avoidance of duplicative litigation. "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to litigants.'" *Kearns*, 15 F.3d at 144 (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)). Additional and potentially relevant considerations include: 1) whether the declaratory action will settle all aspects of the controversy; 2) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; 3) whether the use of a declaratory action will result in entanglement between federal and state court systems; 4) the convenience of the parties; and 5) the relative

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-    15**

convenience of other remedies. *Id.* at 145.

"In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137 (1995). The court's discretion, however, is not unfettered. "A district court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Public Affairs Associates v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580 (1962). There is "no presumption in favor of abstention in declaratory actions generally, nor in insurance cases specifically." *Dizol*, 133 F.3d at 1225. Furthermore, claims that exist independent of the request for a declaration are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule. *Snodgrass v. Provident Life and Accident Insurance Company*, 147 F.3d 1163, 1167 (9th Cir. 1998), citing *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1289 & n. 6 (9th Cir. 1996). Instead, they invoke the "'virtually unflagging'" obligation of the district court to hear jurisdictionally sufficient claims. *Id.*, citing *First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 163 (9th Cir. 1997).

In *Snodgrass*, the Ninth Circuit Court of Appeals noted that on several occasions it had affirmed district court decisions to exercise jurisdiction under the Declaratory Judgment Act where the dismissal of claims for declaratory relief "would not have saved the district court from having to adjudicate the controversy and deal with state law issues." *Id.*, quoting *St. Paul Fire & Marine Ins. Co. v. F.H.*, 117 F.3d 435, 438 (9th Cir. 1997). According to the court of appeals, "[t]he appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Id.* at 1167-68. See also *Dizol*, 133 F.3d at 1225 ("If a federal court is required to determine major

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-      16**

issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation").

Lamar contends this court does not have discretion to decline jurisdiction because of its state law claims for breach of fiduciary duty, negligence, malpractice and breach of the duty of good faith and fair dealing. According to Lamar, "[d]eclining jurisdiction over the declaratory judgment claims while retaining jurisdiction over tort claims arising from the same nucleus of operative fact would waste judicial resources, create piecemeal litigation, and directly contradict [Ninth Circuit authority]."[8]

This court believes it does have discretion to decline jurisdiction. The tort claims asserted in Lamar's "Second Amended Complaint" do not exist independent of its request for declaratory relief. There is no separate prayer for damages. There is only a prayer for declaratory relief based on a finding that Continental has committed these torts resulting in certain damages to Continental which Lamar asks this court to declare that Continental must reimburse to Lamar. Lamar's damages, if any, are inextricably intertwined with its request for declaratory relief.

This court will not, however, decline to exercise jurisdiction. This declaratory judgment action and the KEC Lawsuit do not involve the same parties and do not involve the same state law issues. The KEC Lawsuit involves Lamar and KEC and the issues involve Idaho law, with the remaining issue involving Lamar's laches defense. The declaratory judgment action involves Lamar and Continental. Laches is not an issue, nor is Idaho law. Breach of fiduciary duty, negligence, malpractice and breach of the duty of good faith and fair dealing are

---

[8] Declaratory judgment, unlike tort, is not a cause of action. It is a claim for relief.

claims to be determined under Washington and/or Louisiana law.[9] As such, this court will not be called upon to engage in a "needless determination" of state law issues and furthermore, there is no concern about "forum shopping" and "duplicative litigation."[10] The declaratory judgment action will settle all aspects of the controversy between Lamar and Continental (i.e., whether Continental committed the aforementioned torts against Lamar). The court fails to see how the

---

[9] Lamar is a Louisiana company with its principal place of business in Louisiana. Lamar's "Second Amended Complaint" alleges Washington and Louisiana state law govern the substantive issues of liability, agency, and damages.

[10] In *Hungerford*, the Ninth Circuit reversed a district court, finding the district court should have declined to exercise jurisdiction over a declaratory judgment action where, among other things, the underlying state action could determine the same issue of state law as was sought to be determined in the federal declaratory judgment action. ("Any other holding, given the facts of this case, would result in the federal district court needlessly analyzing a state law issue that the state court is equally, if not better equipped to decide; it will also lead to the state and federal appellate courts reviewing claims arising from an **identical** set of facts even though the cases can easily be consolidated if filed within the same court"). 53 F.3d at 1018 (emphasis added). See also *American Economy Insurance Company v. Williams*, 805 F.Supp. 859, 863 (D. Idaho 1992)(district court declined to exercise jurisdiction in a declaratory judgment action where the underlying state action required resolution of identical factual issues).

The Idaho courts and this federal court are not entertaining any of the same issues of state law and obviously, the facts related to those issues of state law are not identical. The legal issues in the Idaho action and in this declaratory judgment action are "separable" and therefore, the issues in the declaratory judgment action are "ripe." See *Skinner v. Allstate Insurance Company*, 329 Mont. 511, 127 P.3d 359, 363 (Montana 2005)("where there remain unresolved relevant issues in the underlying case, inseparable from the issues presented in the declaratory judgment action, the duty to indemnify is not ripe for resolution").

**ORDER DENYING MOTION TO DISMISS OR FOR STAY-** 18

declaratory judgment action is being sought by Lamar merely for the purposes of procedural fencing or to obtain a "res judicata" advantage. The declaratory judgment action will not result in entanglement between federal and state court systems. The fact that Lamar may ultimately prevail on its laches defense in the Idaho courts, perhaps rendering "moot" the declaratory relief it seeks in this court, does not amount to "entanglement," and it is not apparent how rulings this court may make during the course of the declaratory judgment action would have implications for the remaining issues to be adjudicated in the Idaho courts.

When a court declines to exercise jurisdiction over a declaratory judgment action (i.e., "abstains"), it has the option to stay or dismiss the action in favor of pending state court proceedings involving the same issues and parties. *Wilton*, 515 U.S. at 287-89. The pending state court proceedings in Idaho do not involve the same issues and parties. Because there is no basis for dismissal of the declaratory judgment action on jurisdictional grounds, and this court chooses not to abstain from exercising jurisdiction, there is no independent legal basis for granting a stay of the declaratory judgment action. In sum, if the court were to abstain (not exercise jurisdiction), it could dismiss or stay. Because the court is not abstaining, there is no basis for either a dismissal or a stay.

### III. CONCLUSION

Undoubtedly, there is some immediate appeal in Continental's argument that Lamar's declaratory judgment action is "unripe" or, even if "ripe," that subject matter jurisdiction should not be exercised due to the simple fact that no "final judgment" has been entered against Lamar in the KEC Lawsuit. Upon closer examination of the facts and circumstances of this case, however, the court is persuaded that Lamar's tort claims against Continental are "ripe" for adjudication, and that ruling upon the same will not amount to an "advisory opinion." "Mootness" may become an issue if and when the Idaho courts rule that, because

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-    19**

1  of laches, Lamar does not have to indemnify KEC.
2  　　Continental's "Motion For Summary Judgment Of Dismissal Without
3  Prejudice, Or, In The Alternative, For Stay, Because Of Pending Underlying
4  Action" (Ct. Rec. 14) is **DENIED**.
5  　　**IT IS SO ORDERED**.  The District Executive is directed to enter this order
6  and forward copies thereof to counsel of record.
7  　　**DATED** this _____ of May, 2006.

_____
ALAN A. McDONALD
Senior United States District Judge

**ORDER DENYING MOTION
TO DISMISS OR FOR STAY-**　　20